UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


SOONEJOO KIM GRAHAM, #425697,

        Petitioner,

                              CASE NO. 2:19-CV-10638
v.                            HON. GERSHWIN A. DRAIN

MARK MCCULLICK,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

## I. INTRODUCTION

This is a habeas case brought pursuant to 28 U.S.C. § 2254. Michigan prisoner Soonejoo Kim Graham ("Petitioner") was convicted of first-degree home invasion, MICH. COMP. LAWS § 750.110a(2), following a jury trial in the Jackson County Circuit Court. He was sentenced, as a third habitual offender, MICH. COMP. LAWS § 769.11, to 15 to 40 years imprisonment in 2017. In his current pleadings, he raises claims concerning the sufficiency of the evidence; the admission of other acts evidence; and the validity of his sentence. For the reasons stated herein, the Court denies the petition for a writ of habeas corpus, denies a

certificate of appealability, and grants leave to proceed in forma pauperis on appeal.

## II. FACTS AND PROCEDURAL HISTORY

Petitioner's convictions arise from a home invasion in Jackson, Michigan during the early morning hours on July 2, 2014. The Michigan Court of Appeals described the relevant facts, which are presumed correct on habeas review, 28 U.S.C. § 2254(e)(1); *see also Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009), as follows:

> This case arises out of a home invasion that occurred July 2, 2014, in Jackson County, Michigan. Courtney Husak, who was visiting her grandparents, George and Mary Husak, testified that she woke up at approximately 2:00 a.m. and saw a figure standing in the doorway to her bedroom. Courtney yelled and ran after the person, who ran out of the house. Courtney described the intruder as being at least six feet tall and having a heavier build, but she later testified that she could not give a good description of the intruder because she had just woken up and was wearing contacts that blurred her vision. She testified that after the incident she determined that money was missing from her purse.
>
> Mary Husak testified that she woke up that morning when she heard Courtney's voice. Mary went into the hallway to help Courtney, then called 911. After police arrived at the home, Mary found a partial cigarette lying in her bedroom doorway. Mary testified that the cigarette appeared as though someone had pinched it off so that it could be smoked more later. There was no indication that the cigarette had been smoked while in the house. According to Mary and Courtney, no one in the home smoked, and the cigarette was not there before the incident. Mary later concluded that a $50 bill was missing

from her billfold, as well as some $2 bills, bicentennial quarters, and 50 cent pieces.

Officer Darin McIntosh testified that he responded to the home invasion and that Courtney's description of the intruder was very vague, but that she generally described the suspect as being a male between six feet tall and six feet two inches tall, and having a heavier build. Officer McIntosh collected the partial cigarette from the home, and testified that the house did not smell like smoke and that the cigarette did not look like it had been lit and thrown down on the ground. DNA testing identified defendant's DNA on the partial cigarette.

Sherry Peters, defendant's ex-girlfriend, testified that in July 2014 defendant lived at her home approximately five miles from the location of the home invasion. Peters testified that she and defendant went to bed at 12:30 a.m. on the morning of July 2, 2014. When she woke up later that morning, defendant was present and then left for work. Peters testified that she is a light sleeper and that as far as she knew, defendant did not get out of bed that night. She further testified that although her two dogs bark at any noise, she never heard the dogs bark that night. Peters testified that in her conversations with defendant at the time, he said that he was not involved in the home invasion. She also testified that she regularly smokes on her patio and that she has observed people in her neighborhood pick up discarded cigarette butts "all the time."

Defendant testified that he got up around 3:30 a.m. on July 2, 2014, to finish a painting job before the holiday weekend. Defendant testified that he smokes and that he does not always smoke the entire cigarette. He testified that he did not know how a cigarette with his DNA got into the victim's house, but that he had seen people pick up his discarded cigarette butts. Defendant testified that he had not smoked crack cocaine in two years. Defendant further testified that he was five feet, eight inches tall and weighed around 165 pounds. Defendant stated that when he heard there was a warrant for his arrest for the home invasion he turned himself in to police.

Before trial, the prosecutor filed a motion to admit evidence concerning defendant's two prior home invasion convictions from 2004. The trial court permitted testimony of the prior convictions to be introduced at trial under MRE 404(b) to show motive, identity, scheme, or plan. The testimony described a home invasion in the early in the morning of August 19, 2004. At a home near where defendant lived, the homeowner reported that she woke up while sleeping on the couch and saw a man standing near her television. The homeowner's purse had been hanging near the front door and was spread out on the floor. On the front porch of the house, police discovered a Michigan Identification Card belonging to defendant. Defendant confessed to police that he had entered the home that night to steal items to sell to support his drug habit. Defendant also admitted to breaking into another house that same evening, where he stole a VCR that he traded for a rock of crack cocaine. Defendant pleaded guilty to the two home invasions that occurred in 2004.

At the conclusion of the evidence, the jury in this case returned a verdict finding defendant guilty of the 2014 home invasion. The trial court thereafter sentenced defendant to 15 to 40 years' imprisonment.

*People v. Graham*, No. 337780, 2018 WL 1832095, *1–2 (Mich. Ct. App. April 17, 2018) (unpublished).

Following his convictions and sentencing, Petitioner filed an appeal of right with the Michigan Court of Appeals essentially raising the same claims as presented on habeas review. The court denied relief on those claims and affirmed Petitioner's conviction and sentence. Petitioner then filed an application for leave to appeal with the Michigan Supreme Court, which was denied in a standard order. *People v. Graham*, 503 Mich. 911, 919 N.W.2d 405 (2018).

4

Petitioner thereafter filed his initial pro se habeas petition raising the sufficiency of the evidence and the admission of other acts evidence claims that he raised on direct appeal in the state courts. ECF No. 1. Respondent filed an answer to the petition contending that it should be denied for lack of merit. ECF No. 8. Petitioner filed a reply to that answer. ECF No. 10. Additionally, he recently filed an amendment to his habeas petition to include the sentencing claim that he raised on direct appeal in the state courts, but had neglected to include in his original petition. ECF No. 11.

### III. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state court convictions. The AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable

determination of the facts in light of the evidence presented

in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' ... clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15–16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520–21 (citations omitted); *see also Williams*, 529 U.S. at 409. The "AEDPA thus

imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997)); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (per curiam)).

A state court's determination that a claim lacks merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* Thus, in order to obtain habeas relief in federal court, a state prisoner must show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103; *see also White v. Woodall*, 572 U.S. 415, 419-20

(2014). Federal judges "are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015). A habeas petitioner cannot prevail as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *Woods v. Etherton*, 136 S. Ct. 1149, 1152 (2016).

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *Williams*, 529 U.S. at 412; *see also Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (noting that the Supreme Court "has held on numerous occasions that it is not 'an unreasonable application of clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citing *Wright v. Van Patten*, 552 U.S. 120, 123 (2008) (per curiam)); *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). Section 2254(d) "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington*, 562 U.S. at 100. Furthermore, it "does not require citation of [Supreme Court] cases—indeed, it does

not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). The requirements of clearly established law are to be determined solely by Supreme Court precedent. Thus, "circuit precedent does not constitute 'clearly established Federal law as determined by the Supreme Court'" and it cannot provide the basis for federal habeas relief. *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012) (per curiam). The decisions of lower federal courts, however, may be useful in assessing the reasonableness of the state court's resolution of an issue. *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007) (citing *Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003)); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Moreover, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## IV. ANALYSIS

### A.      Sufficiency of the Evidence Claim

Petitioner first asserts that he is entitled to habeas relief because the prosecution failed to present sufficient evidence that he committed the first-degree home invasion. Specifically, he asserts that DNA evidence alone was insufficient to support his conviction. The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (internal citation and footnote omitted). The sufficiency of the evidence standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, and through the framework of 28 U.S.C. § 2254(d). *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Thus, under the AEDPA, challenges to the sufficiency of the evidence must survive "two layers of deference to groups who might view facts differently" than a reviewing court on habeas review – the factfinder at trial and the state court on appellate review – as long as those determinations are reasonable. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).

Additionally, "it is the responsibility of the jury – not the court – to decide what conclusions should be drawn from the evidence admitted at trial." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). A federal court may not re-weigh the evidence or re-determine the credibility of the witnesses. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983); *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). A habeas court must defer to the factfinder at trial for its assessment of the credibility of witnesses. *Id.*

Under Michigan law, the elements of first-degree home invasion are: (1) that the defendant either broke and entered a dwelling or entered a dwelling without permission; (2) that defendant either intended when entering to commit a felony, larceny, or assault in the dwelling or at any time when entering, present in, or exiting the dwelling committed a felony, larceny, or assault; and (3) while the defendant was entering, present in, or exiting the dwelling either the defendant was armed with a dangerous weapon or another person was lawfully present in the dwelling. *People v. Wilder*, 485 Mich. 35, 43, 780 N.W.2d 265 (2010); MICH. COMP. LAWS § 750.110a(2).

As with any offense, the prosecution must prove beyond a reasonable doubt that the defendant committed the charged offense. *People v. Kern*, 6 Mich. App. 406, 409, 149 N.W.2d 216 (1967). Direct or circumstantial evidence and

reasonable inferences arising from that evidence may constitute satisfactory proof of the elements of an offense, *People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993), including the identity of the perpetrator, *Kern*, 6 Mich. App. at 409, see also *People v. Johnson*, 146 Mich. App. 429, 434, 381 N.W.2d 740 (1985), and the defendant's intent or state of mind. *People v. Dumas*, 454 Mich. 390, 398, 563 N.W.2d 31 (1997).

The Michigan Court of Appeals considered this claim on direct appeal, applied the *Jackson* standard, and denied relief finding that the prosecution presented sufficient evidence–including DNA evidence–to support Petitioner's first-degree home invasion conviction. The court explained in relevant part:

> In this case, the prosecution established that the intruder entered the dwelling without permission. This was established by Courtney's testimony that she saw a man in the home in the middle of the night and by Mary's testimony that the Husaks had given no one permission to enter the home. The partial cigarette found in the home lends additional support to the allegation that someone other than the Husaks was in the home that night given the testimony of the Husaks that they do not smoke and that the cigarette was not present in the home before the intruder entered the home. The prosecution further established that, while in the dwelling, the intruder committed larceny by taking items from Courtney's and Mary's purses. The prosecution therefore established the elements of first-degree home invasion by establishing that a person entered the dwelling without permission, committed larceny while in the dwelling, and that another person was present in the home during the home invasion.

Defendant does not dispute that the prosecution established these elements, but instead contends that the evidence does not establish that he was the person who committed the home invasion. In other words, defendant challenges the identity element of the crime. The prosecution is required to prove identity as an element of every offense. *People v. Yost*, 278 Mich. App. 341, 356; 749 N.W.2d 753 (2008). In this case, the primary evidence introduced by the prosecution to establish that defendant was the person who entered the home was the presence of defendant's DNA on the partial cigarette found in the home. Witnesses testified that the cigarette was not in the home before the incident and that no other individuals in the home were smokers. It is therefore a reasonable inference for the jury to draw that whoever entered the home illegally that night was the person who left the partial cigarette. The fact that defendant's DNA was present on the partial cigarette tends to prove that the cigarette was in defendant's possession before it was dropped in the home, and therefore supports the conclusion that defendant was in the home.

Circumstantial evidence and reasonable inferences drawn from that evidence may suffice to prove the elements of a crime. *People v. Carines*, 460 Mich. 750, 757; 597 N.W.2d 130 (1999). In fact, our Supreme Court has held that "circumstantial evidence is oftentimes stronger and more satisfactory than direct evidence." *People v. Hardiman*, 466 Mich. 417, 429 n. 7; 646 N.W.2d 158 (2002), citing *People v. Wolfe*, 440 Mich. 508, 526; 489 N.W.2d 748 (1992), *amended* 441 Mich. 1201 (1992).

In this case, a rational trier of fact could have concluded that the partial cigarette was left in the home by the intruder, and that defendant's DNA on the partial cigarette supports the conclusion that defendant was that intruder. While it is possible that other explanations exist, such as the cigarette being dropped in the home by some other person who had gained access to defendant's partial cigarette, the existence of other possible explanations does not negate that the evidence supports the conclusion of defendant's guilt. The jury rejected the idea that the cigarette was brought into the home by another individual despite defendant's testimony that he

had often seen other people pick up his discarded cigarette butts. This Court will not interfere with the jury's role to determine the weight to be given the evidence or the credibility of the witnesses. *People v. Kanaan*, 278 Mich. App. 594, 619; 751 N.W.2d 57 (2008). Moreover, although the prosecution is required to prove the elements of the crime beyond a reasonable doubt, the prosecution is not obligated to disprove or negate every theory consistent with innocence. *Nowack*, 462 Mich. at 400, citing *People v. Konrad*, 449 Mich. 263, 273 n. 6; 536 N.W.2d 517 (1995).

Viewing the evidence in the light most favorable to the prosecution, as we are bound to do, and drawing all reasonable inferences in support of the jury verdict, *Norwack*, 462 Mich. at 400, we conclude that the identity evidence presented, though circumstantial, was sufficient for a rational trier of fact to conclude that defendant was the person who committed the home invasion in question.

*Graham*, 2018 WL 1832095 at *2–4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. The testimony of the residents, as well as the DNA evidence from the cigarette found in the home, provide sufficient evidence to establish that Petitioner committed the first-degree home invasion. Petitioner challenges the inferences the jury drew from the cigarette DNA evidence and the other testimony presented at trial. However, it is the job of the fact-finder at trial–not a federal habeas court–to resolve evidentiary conflicts. *See Jackson*, 443 U.S. at 326; *Martin*, 280 F.3d at 618; *see also Walker v. Engle*, 703 F.2d 959, 969–70 (6th Cir. 1983) ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must

presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."). The jury's verdict was reasonable. The evidence presented at the trial, viewed in a light favorable to the prosecution, established beyond a reasonable doubt that Petitioner committed the first-degree home invasion.

Lastly, to the extent that Petitioner contests the Michigan Court of Appeals' interpretation of state law, he is not entitled to relief. It is well-settled that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). State courts are the final arbiters of state law and federal courts will not intervene in such matters. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief does not lie for perceived errors of state law. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991). Habeas relief is therefore not warranted on this claim.

### B.     Other Acts Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in admitting other acts evidence, namely the evidence of his prior 2004 home invasions. A federal court may only grant habeas relief to a person who is

"in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Alleged trial court errors in the application of state evidentiary law are generally not cognizable as grounds for federal habeas relief. *See Estelle*, 502 U.S. at 67–68 ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions"). "Trial court errors in state procedure or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action, unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004) (quoting *Estelle*, 502 U.S. at 69–70); *see also Wynne v. Renico*, 606 F.3d 867, 871 (6th Cir. 2010) (citing *Bey v. Bagley*, 500 F.3d 514, 519–20 (6th Cir. 2007)); *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

The Michigan Court of Appeals considered this claim on direct appeal and denied relief; it found that the other acts evidence was properly admitted at trial for the purpose of establishing Petitioner's identity as the perpetrator and as evidence of his common scheme or plan, which was to break into homes during the early morning hours while people slept to steal things in order to support his substance addiction, and then to flee if and when the residents awoke. The court further noted that the trial court gave a limiting instruction to the jury about the

proper consideration of the evidence, which jurors are presumed to follow. *Graham*, 2018 WL 1832095 at *4–5.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of Supreme Court precedent or the facts. First, to the extent that Petitioner asserts that the trial court erred in admitting evidence under Michigan law, he merely alleges violations of state law which do not justify federal habeas relief. *See, e.g., Bey*, 500 F.3d at 519. As discussed, state courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328.

Second, Petitioner fails to establish that the admission of the other acts evidence resulted in a federal due process violation. As to the admission of other acts evidence, the Supreme Court has declined to hold that similar "other acts" evidence is "so extremely unfair" that its admission violates "fundamental conceptions of justice." *Dowling v. United States*, 493 U.S. 342, 352–53 (1990). Thus, "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329 F.3d at 512. Consequently, there is no Supreme Court precedent that the state court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *Adams v. Smith*, 280 F. Supp. 2d 704, 715

(E.D. Mich. 2003). Petitioner thus fails to state a claim upon which habeas relief may be granted as to such matters.

Moreover, even if Petitioner states a cognizable claim as to the other acts evidence, he is not entitled to relief on federal habeas review. He fails to show that the admission of the other acts evidence rendered his trial fundamentally unfair. The other acts evidence was relevant and admissible on the issue of identity and common plan or scheme. The prosecutor did not make a character or propensity argument; further, the risk of unfair prejudice was mitigated by the trial court's instructions to the jury about the proper consideration of the other acts evidence. Jurors are presumed to follow a court's instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001) (citing *Richardson v. Marsh*, 481 U.S. 200, 211 (1987)); *United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Petitioner fails to show that the admission of the other acts evidence was erroneous or, more importantly for purposes of habeas review, that it rendered his trial fundamentally unfair. Habeas relief is thus not warranted on this claim.

### C.    Sentencing Claim

Lastly, Petitioner asserts that he is entitled to habeas relief because the trial court erred in scoring Offense Variable 9 ("OV 9") of the state sentencing

guidelines. A sentence imposed within the statutory limits is generally not subject to federal habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999). Claims which arise out of a state trial court's sentencing decision are not cognizable upon habeas review unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *Lucey v. Lavigne*, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001). Petitioner's sentence of 15 to 40 years imprisonment is within the statutory maximum of life imprisonment. *See* MICH. COMP. LAWS §§ 750.110a; 769.11. Consequently, his sentence is insulated from habeas review absent a federal constitutional violation.

Petitioner raised this issue on direct appeal and the Michigan Court of Appeals denied relief finding that OV 9 was properly scored under the state sentencing guidelines. *See Graham*, 2018 WL 1832095 at *6.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. Petitioner's claim that the trial court erred in scoring OV 9 (or any other portion) of the Michigan sentencing guidelines is not cognizable on habeas review because it is a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007); *Howard v. White*, 76 F. App'x 52, 53 (6th Cir. 2003) ("A state court's alleged

misinterpretation of state sentencing guidelines and crediting statutes is a matter of state concern only."); *Cheatham v. Hosey*, 12 F.3d 211, 1993 WL 478854, *2 (6th Cir. Nov. 19, 1993) (departure from state sentencing guidelines is a state law issue which is not cognizable on federal habeas review); *see also Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). Alleged errors in scoring offense variables and determining the sentencing guideline range do not warrant federal habeas relief.

Additionally, to the extent that Petitioner contests the state court's interpretation of state law regarding the offense variables and the application of that law, he is not entitled to relief. As explained, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting on habeas review." *Bradshaw*, 546 U.S. at 76; *Sanford*, 288 F.3d at 860. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *Lewis*, 497 U.S. at 780; *Oviedo*, 809 F.2d at 328. Petitioner thus fails to state a claim upon which relief may be granted as to this issue.

A sentence may violate federal due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *Townsend*, 334 U.S. at 741; *United*

*States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (defendant must have a meaningful opportunity to rebut contested sentencing information).   To prevail on such a claim, a petitioner must show that the court relied upon the allegedly false information.   *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v Jabe*, 803 F. Supp. 70, 80 (E.D. Mich. 1992).   Petitioner makes no such showing.   Rather, the record shows that he had a sentencing hearing before the state trial court with an opportunity to challenge the sentencing information.   Further, he challenged his sentence on direct appeal in the state courts.   Petitioner fails to establish that the state trial court relied upon materially false or inaccurate information in imposing his sentence–which he had no opportunity to correct. Habeas relief is therefore not warranted on this claim.

## V. CONCLUSION

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on his claims.   Accordingly, the Court **DENIES** and **DISMISSES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's decision, a certificate of appealability must issue.   *See* 28 U.S.C. § 2253(c)(1)(a); FED. R. APP. P. 22(b). A certificate of appealability may issue "only if the applicant has made a

substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies habeas relief on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's assessment of the claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Petitioner makes no such showing. Accordingly, the Court **DENIES** a certificate of appealability.

Lastly, the Court **GRANTS** Petitioner leave to proceed in forma pauperis on appeal as an appeal can be taken in good faith. *See* Fed. R. App. P. 24(a). This case is **CLOSED**.

IT IS SO ORDERED.

Dated:        October 28, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge

CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
October 28, 2019, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager